## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DAVID SHEPPARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 23-cv-xxxx |
| | ) |
| DARREN BRYANT, Mayor of Vill. of Robbins, | ) Hon. Judge |
| Illinois, in his individual and official capacities, | ) |
| capacity, and the VILLAGE OF ROBBINS, | ) **JURY DEMANDED** |
| as indemnitor, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

NOW COMES Plaintiff, DAVID SHEPPARD ("Sheppard" or "Plaintiff"), by and through his attorney, GIANNA R. SCATCHELL of DISPARTI LAW GROUP, PC, and complains of Defendants, DARREN BRYANT ("Bryant"), in his official and individual capacities and the VILLAGE OF ROBBINS (collectively "Defendants"), and alleges upon personal knowledge regarding himself or each of his acts, and on belief, regarding all other matters:

## NATURE OF THE CASE

1. Sheppard is a veteran police officer and former police chief in the Village of Robbins. Sheppard's problems with the Village began when he questioned and opposed Mayor Bryant's questionable decision-making and unlawful conduct. This action is based upon Defendants' retaliatory discharge of Plaintiff, and their intentional and unjustified interference with Plaintiff's economic expectancy in violation of law.

## JURISDICTION AND VENUE

1

2. This court has jurisdiction of Plaintiff's claims pursuant to 28 USC §§ 1331 (federal question jurisdiction) and 1343(a)(3) (42 USC § 1983 jurisdiction). The court also has supplemental jurisdiction of Plaintiff's claims under Illinois law pursuant to 28 USC § 1367.

3. Venue is proper in this Court because Defendants' acts complained of occurred in the Village of Robbins, Illinois, Cook County, which is within the jurisdictional boundaries of this Court.

## PARTIES

4. Sheppard is a resident of Cook County, Illinois. He served as the full-time Robbins' police chief from October 2021 until his wrongful termination on or about April 14, 2023. Defendants' illegal and unjustified acts caused his wrongful termination from his position as chief of police.

5. Bryant is an individual residing in the Village of Robbins, Illinois. Since May 11, 2021, through present, Defendant Bryant has been the elected Mayor of Robbins, Illinois. As Mayor, Bryant is a final policymaker. He engaged in the conduct complained of while acting under the color of law. He is sued in his official and individual capacities.

6. The Village of Robbins, Illinois (hereafter the "Village") is a unit of local government organized under the laws of the State of Illinois and has the authority to adopt, enforce, and monitor all policies for the management and governance within the Village of Robbins.

7. The Village has indemnification obligations for wrongful acts committed by its officials, employees, and agents. See 745 ILCS §§ 10/1-202 and 9-102. Accordingly, it is responsible for the challenged actions of Bryant and the Village.

## Chief Sheppard's Exemplary Background

8. Sheppard has an extensive and exemplary law enforcement background. Sheppard is a United States Navy veteran, a former candidate for the Illinois House of Representatives, a recipient of the lifesaving award, and was recently elected to serve on District 124's school board.

9. On or about October 5, 2021, the Village Council, by a majority vote, appointed Sheppard as the police chief of Robbins "to restore dignity and trust to a department that had lost both in recent years."

10. Before Sheppard was sworn in as the police chief, the Village's police officers staged a walk out to protest poor working conditions, low pay, and inadequate safety equipment including expired bulletproof vests.

11. Shortly after becoming the police chief, Sheppard spent $6,000 of his personal funds to equip the officers with necessary safety equipment that the Village refused provide.

12. Sheppard helped negotiate a new contract with substantial pay increases and new equipment and also increased the size of the Robbins' Police Department ("RPD") from 11 officers to 46 officers.

13. During Sheppard's time as police chief, he spearheaded a dramatic reduction in violent crimes as indicated in the table below, including a 90% reduction in homicides.



| Crimes ↓ | 2021 | 2022 | Decreased |
|---|---|---|---|
| Aggravated Battery | 4 | 2 | 50% |
| Burglary Alarm | 319 | 290 | 9% |
| Battery | 37 | 32 | 13% |
| Criminal Damage to Property | 52 | 41 | 21% |
| Citizen Assist | 401 | 242 | 39% |
| Criminal Sexual Assault | 10 | 6 | 40% |
| Disturbance | 215 | 179 | 16% |
| Domestic Disturbance | 303 | 267 | 11% |
| Fraud | 32 | 20 | 37% |
| Criminal Homicide | 11 | 1 | 90% |
| Gun Shot Victim | 15 | 9 | 40% |
| Illegal Dumping | 15 | 9 | 40% |
| Man with Gun | 44 | 38 | 13% |
| Noise Complaint | 110 | 41 | 62% |
| Parking Problem | 300 | 114 | 62% |
| Robbery | 4 | 2 | 50% |
| Shots Fired | 120 | 75 | 37% |
| Suspicious Activity | 183 | 148 | 19% |
| Suspicious Vehicle | 181 | 73 | 6% |
| Theft | 72 | 61 | 15% |

**Sheppard's Protected Activities Leading to his Purported Termination**

14. Sheppard satisfactorily performed his duties throughout his employment Bryant. continuously approved Sheppard's quarterly bonus and told him to "keep up the good work."

15. Sheppard was issued no verbal warnings, disciplinary suspensions, or formal counseling sessions to try to resolve any of the Village's issues with his performance.

16. Sheppard's problems with the Defendants began when he refused to unlawfully terminate the then-deputy chief, Byron Redmond, which created a snowball effect that triggered Bryant's retaliatory trajectory is summarized by four key events that culminated with Sheppard's termination.

17. From March 2, 2023, until his unlawful termination, Sheppard attempted to meet with Bryant to address his concerns about transparency and performance expectations to no avail.

**Event 1 - Chief Sheppard Refuses to Unlawfully Terminate the Deputy Chief**

18. In May 2022, Defendant Bryant received a copy of a social media video that allegedly showed Redmond drinking alcohol with colleagues in his office while he was off duty.

19. Village administrators were regularly seen indulging in similar practices, consuming alcoholic beverages within their offices both outside and during working hours.

20. Sheppard personally witnessed several senior administrators, including Defendant Bryant, partaking in, or offering alcoholic beverages, confirming the widespread nature of this practice.

21. Despite the absence of valid grounds, Defendant Bryant pursued Redmond's termination by incorrectly asserting that Redmond was an at-will employee.

22. Sheppard unsuccessfully tried to educate Bryant about the requisite disciplinary policies and minimum due process that the Village was obligated to enforce.

23. Bryant forced Sheppard to meet with him 11 times to discuss Redmond's termination.

24. Ultimately, Sheppard's position remained unchanged, and Sheppard submitted a final written report finding against Redmond's termination.

25. Bryant expressed dissatisfaction with this principled stance.

26. In a highly unprofessional incident, Bryant called Sheppard, demanding that, "[HE] WANT[S] REDMOND FIRED BY THE END OF THE DAY," before abruptly ending the call.

27. Subsequently, Bryant falsely accused Sheppard of intentionally hampering Bryant's purported investigation into the Deputy Chief.

28. According to Robbins' ordinance, only Sheppard is vested with the power to remove a deputy chief.

29. Disregarding appropriate protocol, Bryant removed Redmond as deputy chief without Sheppard's approval and without formally presenting written charges to the Village Council.

30. Bryant also terminated Redmond as a police officer without written charges being brought before the Board of Police and Fire Commission recommending termination.

31. Bryant's actions engendered intense public controversy questioning whether his unilateral termination of Redmond's employment was an abuse of power.

### Event 2 – Bryant Attempts to Interfere with a Criminal Investigation

32. In February 2023, three teenagers stole a Kia and crashed into a car, which killed a 71-year-old man.

33. The stolen vehicle was a key piece of evidence in the death investigation and was stored in a large, enclosed building—the "Salt Barn"— because state police had not yet processed it.

34. Bryant contacted Sheppard and told him that the car had to be moved because it was blocking public works vehicles.

35. Sheppard informed Bryant that this was the only place to store the vehicle to preserve it from the outside elements.

36. During one conversation about the stolen vehicle, Bryant referred to himself in the third person ordering Sheppard "to stop talking, Bryant is talking," then called Sheppard an "idiot" for storing and protecting this vehicle.

37. Bryant continued to request the vehicle's removal even after being told that moving the vehicle could corrupt the evidence.

38. The director of public works refuted the claim that the vehicle was obstructing the entrance to the Salt Barn, thereby raising doubts about Bryant's justification.

**Event 3: Bryant Unilaterally Hires an Unqualified Police Officer**

39. The Robbins Police Department is required to conduct comprehensive background checks on all prospective law enforcement hires.

40. In February 2023, Bryant directed Sheppard to hire Frank Sanders, a 65-year-old retired police officer, as a lieutenant, even though Sanders had not formally applied or undergone a background check.

41. Bryant eventually acknowledged that Sanders would need to complete an official police employment application as a necessary step in the hiring process.

42. Sanders applied to be a Robbins' Police Officer.

43. Sanders' employment application contained several glaring inconsistencies:

    a) At 65 years old, Sanders exceeded the age limit for police officers, rendering him ineligible under Illinois law.

    b) Sanders' application lacked any mention of previous law enforcement employment or relevant references. When Sheppard asked Sanders about the absence of such

references, Sanders responded that his former colleagues were "dead" and that "Bryant was his reference."

c) Sanders failed to disclose that he was terminated from the Harvey Police Department in 2003, where he served as a part-time officer. When questioned about his termination from the Harvey Police Department, Sanders denied being fired and then questioned the relevance of his past termination to his potential employment with the Robbins Police Department.

d) During the background check, neighbors reported that Sanders frequently engaged in marijuana use, causing the smoke to seep into their apartments. In response to these allegations, Sanders claimed that Sheppard lacked the authority to interview his neighbors and accused Sheppard of lacking integrity.

44. On or about February 23, 2023, in an unprecedented move, Bryant unilaterally placed Sanders' name on the Village Council's Meeting agenda to be sworn in as a police lieutenant.

45. At the next Village Council meeting, Sanders was sworn in as a police lieutenant.

46. Because of the irregular sequence of events, Sanders never submitted to the mandatory pre-employment screening until after he was a sworn officer.

47. Sanders was required, as a condition of his employment, to undergo a belated pre-employment drug test at Advocate Aurora Health ("AAH"), an independent drug testing facility.

48. Upon his arrival at the designated site, Sanders complied and provided a urine sample as required for the testing procedure.

49. Following the submission of the initial sample, the laboratory personnel informed Sanders that his specimen could not be accepted due to a temperature discrepancy.

50. When asked to provide a second sample to rectify the issue, Sanders refused, stating that "he was not waiting to provide another specimen" and that "he had something else to do."

51. AAH informed Sanders that this incident would be documented as a refusal.

52. Despite his refusal, Sanders was instructed once again to submit a new urine sample.

53. In a concerning turn of events, on or about March 9, 2023, Sheppard received an email from Jerene Patton of AAH stating that both of Sanders' urine specimens collected "were out of range" and the "system stated to discard the sample" based on the temperature irregularities.



54. The subsequent sample provided by Sanders was also rejected due to temperature irregularities.

55. The next day, Sheppard spoke with different employee at AAH who reiterated to Sheppard that Sanders "kept trying to convince [the staff] to take the [urine] test for him."

56. Sheppard relayed his concerns to Bryant that Sanders had submitted false urine samples and that he was attempting to bribe the AAH staff to provide a urine sample for him:



**From:** David Sheppard <​▓▓▓▓▓▓▓​>
**Sent:** Thursday, March 9, 2023 5:27 PM
**To:** Shuntai Sykes <​▓▓▓▓▓▓▓​>
**Cc:** Mayor Darren Bryant <▓▓▓▓▓▓
**Subject:** Fw: Drug collection

Good Afternoon, Ma'am

On Monday, March 9, 2023, Mr. Frank Sanders was ordered to report to Advocate Occupational/Employee Health Medical Office Center to submit for a physical and drug screening (see attached). Mr. Sanders received the order, along with the lab form, and stated he would report as ordered. On Wednesday, March 8, 2023, I received a call from the testing site. I was informed that Mr. Sanders submitted urine that did not have a temperature. In my experience, as well as the drug testing field, this happens when a person is trying to be less than truthful and fool the test by providing someone else urine. I informed the testing site to have Mr. Sanders submit a second sample for testing.

Today, March 9, 2023, I received the forwarded email that's attached below. Within this email it states, "The system stated to discard second sample." This is in line with a second attempt to deceive the testing system. The email further states, "Patient stated he had something else to do" and "Patient did leave without providing specimen". This is in violation of the direct order to report for testing. What's more alarming is what follows in the email, **"Patient attempted to get staff to provide a false sample on his behalf"**. This is a direct violation of the Village of Robbins and the Robbins Police Department rules, regulations, and policy. As well, Bribery is a class A misdemeanor in the state of Illinois. These actions are considered "Conduct unbecoming of a Police Officer". Please advise as to what you would like me to do.

Respectfully,
Chief Sheppard

**57.** Bryant dismissed Sheppard's documented concerns, and instead responded with an email questioning Sheppard's use of the term "bribery."



**From:** Mayor Darren Bryant <​▓▓▓▓▓▓​>
**Sent:** Friday, March 10, 2023 11:54 AM
**To:** David Sheppard <​▓▓▓▓▓▓▓▓▓​>
**Cc:** Larry Hall <▓▓▓▓▓▓
**Subject:** Re: Drug collection

Good morning,

Thank you Chief, I am in receipt of your email. You summarized the incident by using the word bribery. The accusation of bribery is a very serious offense in which I don't take lightly. Can you please elaborate so I can receive full contextual understanding on this incident when it pertains to bribery.

Thank you,
Mayor

**58.** Bryant next blamed Sanders' age for his urine collection irregularities by stating that "[Sanders] is 65 years old," which falsely implies that older individuals produce urine at an irregular temperature.

**59.** This dubious conduct raised questions regarding Sanders' compliance with the drug testing procedure and his suitability for the role of police lieutenant.

**60.** Based on these concerning findings, Sheppard informed Bryant that he did not recommend Sanders as a Robbins' police officer.

**61.** Despite Sheppard's documented instances of Sanders' misconduct, Sanders remains a police lieutenant with the Village of Robbins.

**<u>Mayor Bryant's Other Questionable Decision-Making</u>**

62. Over the past year, Bryant has exhibited other errors in judgment that Sheppard openly questioned and/or opposed including:

  a) Attempting to allow the Chopp Shopp (a barber shop) to put on large fireworks display for the Fourth of July within the Village without possessing the requisite permit or license.

  b) Misrepresenting the location of where a shooting occurred. Bryant contacted Sheppard and provided a different location than the police call-out. Bryant's location of the shooting was not correct. When Sheppard and other officers went to the location of the police call-out, they discovered over 30 shell casings. Sheppard suspected that Bryant deliberately misled them, potentially endangering the officers and enabling the suspect to evade capture on Finley Street.

  c) Allowing a local establishment to openly promote the consumption of cannabis on its premises; tolerating excessive overcrowding beyond the approved capacity; permitting indoor use of cannabis and tobacco; facilitating illicit activities, including unauthorized adult entertainment; and disregarding other breaches of regulatory standards, constitutes a clear and substantial violation of the law."

  d) On belief, Bryant's leniency arises from the manager possessing incriminating footage of Bryant engaging in inappropriate activities at the establishment, which had marked track record of being shut down for illegal stripping, overcrowding, and violence.

  e) Improperly classifying various police officers as part-time even though they were working more than 40 hours per week.

63. In early April 2023, Sheppard reported numerous instances of Bryant's concerning behavior, including the officer misclassification and hiring and subsequent conduct of Sanders, to

multiple public agencies. These agencies include the Illinois Attorney General's Office, the Federal Bureau of Investigation (FBI), the Office of the Inspector General of the Intelligence Community, the US Department of Justice, the United States Attorney General, the Office of the Independent Inspector General, the Illinois State Police, Illinois Senator Dick Durbin, and Cook County Board President Toni Preckwinkle.

64. On or around April 12, 2023, Sheppard filed a report with the Department of Labor ("DOL") based on the Village's misclassification of several officers as part-time, when they routinely work more than 40 hours per week and are not receiving at least one and one-half times their regular rates of pay for the overtime hours.

65. Sheppard sent a copy of his DOL complaint to Village administrators on the same day putting them on notice of the complaints before he was fired.

### The Village's Multi-Faceted Attack on Sheppard

66. The next day, on April 13, 2023, Defendants presented Sheppard with an ultimatum to sign a pre-drafted resignation agreement and covenant not to sue or be removed as the police chief.

67. Sheppard refused to sign a resignation agreement and covenant not to sue.

68. On April 14, 2023, Bryant unilaterally removed Sheppard as police chief and terminated his employment after Defendants learned about Sheppard's complaints and after Sheppard repeatedly questioned Bryant's decision-making and conduct.

69. Neither the resignation agreement nor the subsequent termination letter included any reasoning for Chief Sheppard's dismissal.

70. Sheppard rebutted Bryant's unlawful efforts to remove him as police chief and also requested a hearing before the Village Council.

71. Bryant denied his request to be heard before the Village Council.

### Defendants Eviscerated Sheppard's Procedural Due Process Rights

#### *Defendants Failed to Remove Sheppard as Police Chief Properly*

72. Illinois law establishes a process to appoint and remove a police chief in a home-rule municipality. 65 ILCS §§ 5/10-2.1-4, 2.1-17.

73. No police chief shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his defense within 30 days of the charges filed. §10-2.1-17.

74. Sometime after May 13, 2022, the Village amended its ordinance to "clarify the appointment and removal authority of the mayor." 65 ILCS Sec. 3.1-35-10, which was amended as follows:

Except where otherwise provided by statute, the mayor or president may remove any officer appointed by the mayor or president under this Code, on any written charge, whenever the mayor or president is of the opinion that the interests of the municipality demand removal.

The mayor or president shall report the reasons for the removal to the corporate authorities-at a meeting to be held not less than 5 nor more than 10 days after the removal.

If the mayor or president fails or refuses to report to the corporate authorities the reasons for the removal, or if the corporate authorities by a two-thirds vote of all members authorized by law to be elected disapprove of the removal, the officer thereupon shall be restored to the office from which the officer was removed. The vote shall be by yeas and nays, which shall be entered upon the journal of the corporate authorities.

Upon restoration, the officer shall give a new bond and take a new oath of office. No officer shall be removed a second time for the same offense.

75. Before removing Sheppard as police chief, Bryant was required to file a statement of charges with the Village Council with the reasons for removing Sheppard, which shall not become effective unless confirmed by a majority vote of the Council. §10-2.1-4, 2.1-17; Robbins Ord. 3.1-35-10.

76. The Village Council held one regular meeting on April 25, 2023, and did not vote on Sheppard's removal as police chief publicly in violation of §10–2.1–4.

77. Bryant never filed written charges against Sheppard, nor did he provide evidence that the Board was to consider at the Village Council meeting in violation of §10–2.1–4 and Robbins Ord. 3.1-35-10.

78. On belief, Bryant and the Village Council met in closed executive session to discuss Sheppard's removal as chief, but no vote to remove Sheppard was ever taken in either closed or open session.

79. Defendants violated §10–2.1–4 and Robbins Ord. 3.1-35-10 rendering Sheppard's removal invalid because:

    a) Bryant never provided an official opinion to Village Council that the "interests of the municipality demand[ed Sheppard's] removal;"

    b) Bryant never provided the reasons why he removed Sheppard to the Village Council at a meeting not less than 5 days or more than 10 days after he removed Sheppard;

    c) Bryant's only justification for Sheppard's termination was vaguely claiming that he "want[ed] some broader goals met and believes a change in the management of the department is needed to achieve these initiatives."

    d) Village Council never voted or failed to approve Sheppard's removal by a majority 2/3 vote.

80. As such, Bryant improperly removed Sheppard as police chief because Bryant lacks authority under Illinois law to unilaterally remove Sheppard. *Lane v. Vill. Of Heyworth*, 2019 IL App (4th) 180488, ¶ 23, 133 N.E.3d 1282, 1289.

81. Sheppard cannot seek administrative review of his termination because Bryant, as Mayor, is not an administrative body defined by the Illinois Administrative Review Act, and there was never a hearing before an administrative body to review.

82. If not approved, Bryant's decision is neither valid nor final. *Baldermann v. Bd. Of Trustees of the Police Pension Fund, Vill. of Chi. Ridge*, 2015 IL App (1st) 140482 ¶¶ 31-34.

83. Sheppard received **no process** regarding his termination as police chief in violation of §5/10-2.1–17.

## <u>COUNT I: DUE PROCESS VIOLATION</u>
### <u>Plaintiff v. Defendants</u>

84. Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

85. Sheppard had a protected property interest in his position as police chief under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Illinois Constitution of 1970, art. 1, §2, and the Village ordinances.

86. Defendants violated Sheppard's due process rights by not providing the Village Council with a written statement of charges seeking Sheppard's removal, denying Sheppard the right to a full and fair impartial hearing, and in no other way providing Sheppard with an opportunity to be heard, in violation of the due process clause of the United States Constitution, amendment XIV, and the Illinois Constitution of 1970, article 1, § 2.

87. The April 25, 2023, Village Council meeting was a sham, through and through.

88. Bryant never filed a statement of charges seeking Sheppard's removal as police chief, which renders Sheppard's "removal" ineffective.

89. Neither Defendant Village nor Bryant has the authority to deny Sheppard such process.

90. Said acts proximately caused Plaintiff to be denied his right to due process under the Village of Robbins' Police Department general orders, rules, and regulations; Illinois state law; and the Fourteenth Amendment of the United States Constitution through 42 USC § 1983.

91. As a direct and proximate result of the Defendants' actions, Sheppard has been deprived of a recognized property interest protected by the Fifth and Fourteenth Amendments to the United States Constitution in violation of 42 USC 1983.

92. The actions of Defendants in denying him due process of law caused Plaintiff to suffer severe damages including the loss of reputation, pain and suffering, mental anguish, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, Plaintiff, David Sheppard respectfully requests that this Court enter an order against Defendants Village of Robbins and Darren Bryant rescinding his removal and reinstating him as police chief; to be made whole for all losses, including back pay, and back benefits with interest, pension losses; compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendants' conduct; a declaratory judgment that Defendants' actions violate 42 USC §1983; and any other relief that this Court deems just and equitable.

## COUNT II – WRIT OF MANDAMUS – (State Law Claim)
### Sheppard v. Village of Robbins, Illinois

93. Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

94. Mandamus is an extraordinary civil remedy that will be granted to enforce, as a matter of right, the performance of official nondiscretionary duties by a public officer. *Lee v. Findley*, 359 Ill.App.3d 1130, 1133, 296 Ill.Dec. 632, 835 N.E.2d 985 (2005).

95. Pursuant to both Illinois law and Village ordinance, Bryant had authority and a clear duty to properly remove Sheppard as police chief by filing a statement of charges before the Village Council, allowing Sheppard an opportunity to be heard, and after garnering a majority vote by the Village Council.

96. A majority vote from the Village Council never occurred, making Sheppard's removal as police chief ineffective.

97. Sheppard seeks a writ of mandamus to compel the Village to restore him to his position of police chief because he was not correctly removed from that position.

98. Defendant Village has failed to fulfill such duties by refusing Sheppard's requests to provide a hearing before the Council members for removal as a police chief. *Baldacchino v. Thompson*, 289 Ill.App.3d 104, 109, 224 Ill.Dec. 621, 682 N.E.2d 182 (1997).

99. Defendant Bryant is without legal authority and acting contrary to Illinois law by improperly removing him as police chief without any due process rights.

100.    Defendant Village refused Sheppard's request for a hearing to adjudicate the appeal of his removal as police chief.

101.    Defendants are also without legal authority and acting contrary to Illinois law by withholding payment of salary and benefits earned by Sheppard without notice, charges, or a hearing being held before the Village Council.

102.    Under §5/14·101 of the Code of Civil Procedure, this Court is vested with the power to grant Plaintiff a Writ of Mandamus enforcing these nondiscretionary Acts on the part of the Village Council and grant such other relief to enforce those rights.

103.    Sheppard has no other adequate remedy at law other than to compel the Village Council to comply with the applicable provisions of the Municipal Code by invoking the equitable jurisdiction of this Court.

104.    The denial of a hearing before the Village Council is properly remedied through mandamus because Sheppard has established that (1) he has an explicit right to notice of a statement of charges that are brought before the Village Council, (2) this is a clear duty on the part of both

Defendant Bryant and the Village Council to conduct a vote and opportunity for Sheppard to rebut the charges, and (3) clear authority exists in the both Bryant and the Village Council to comply with an order granting mandamus relief.

WHEREFORE, Plaintiff, David Sheppard respectfully requests that this Court find in his favor on this Count and against Defendant Village and restore his position as police chief and any other relief that this Court deems just and equitable.

## COUNT III—42 U.S.C. § 1983 CLAIM FOR DEPRIVATION OF 1ST AMENDMENT RIGHTS & FOR WRONGFUL TERMINATION OF EMPLOYMENT
### Sheppard v. All Defendants

**105.**   Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

**106.**   Bryant, as the Mayor of the Village of Robbins, is a final policymaker because he oversees Village operations and has full and Village authority to administer the Village.

**107.**   As described more fully above and incorporated by reference herein, prior to being terminated, Sheppard engaged in extensive protected speech on matters of public concern, including, but not limited to, filing complaints with FBI, Department of Labor, Department of Justice, State of Illinois Police, Officer of Inspector General, Officer of the Independent Inspector General, Cook County Board President, United State Attorney Office, and the Illinois Senate.

**108.**   The First Amendment to the United States Constitution guarantees Plaintiff's right to speak on matters of public concern free from retaliation.

**109.**   Sheppard had no job purpose for his speech, no self-interest for his speech, and his speech occurred through acts outside the line of duty.

**110.**   Sheppard's interest in acting as a citizen and reporting the actions of the administrators support his claim to the constitutional protection of his First Amendment freedom of speech.

111.    Plaintiff's speech concerned matters of public concern the highest degree of speech protected by the First Amendment.

112.    As a result of Plaintiff's protected activities, Defendants retaliated against him in the manner described in the preceding paragraphs.

113.    Plaintiff's speech was a substantial or motivating factor for Defendants' wrongful and retaliatory termination of Plaintiff's employment.

114.    As a matter of widespread practice so prevalent as to be a municipal policy, those who have dared to oppose the Administration experienced retaliation like that alleged by Plaintiff.

115.    The retaliation against Sheppard was part of systemic express acts espoused by the Village through Bryant as a Village policymaker, to punish Sheppard for exercising his First Amendment rights as described throughout this Complaint.

116.    In fact, Defendants intended by each of the actions described in the preceding paragraphs to punish, retaliate, and deter Sheppard's exercise of his First Amendment Rights.

117.    Said acts proximately caused Plaintiff to be denied his right to free speech under the First Amendment of the United States Constitution through 42 USC § 1983.

118.    The actions of Defendants in denying him his right to free speech caused Plaintiff to suffer severe damages including the loss of reputation, pain and suffering, mental anguish, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, for the foregoing reasons, Plaintiff, David Sheppard, requests that this Court enter judgment in his favor and against Defendants in an amount to be proved at trial, including for lost pay and benefits, general compensatory, special, consequential damages, for emotional distress and reputational harm, for attorneys' fees under 42 USC § 1988, as well as order the Village of

Robbins to reinstate Sheppard as the police chief and provide him with full make-whole relief, and for all such other relief to which he is entitled and the Court deems just and proper.

**COUNT IV – 42 U.S.C. § 1983 DEPRIVATION BASED ON RETALIATION**
**Sheppard v. Bryant**

**119.** Plaintiff realleges each paragraph of this Complaint as if fully restated here.

**120.** Bryant, as the Mayor of the Village of Robbins, is a final policymaker for the Village because he oversees all operations of the Village and has authority over significant matters involving the exercise of discretion.

**121.** The 14th Amendment to the United States Constitution guarantees the Plaintiff the right to be free from retaliation for protected activity.

**122.** Prior to Sheppard's termination, Sheppard informed the Defendants that he reported their misconduct related to various public agencies: including the FBI, Department of Labor, Department of Justice, State of Illinois Police, Officer of Inspector General, Officer of the Independent Inspector General, Cook County Board President, United State Attorney Office, and the Illinois Senate.

**123.** When Defendants subjected Plaintiff to the aforementioned materially adverse employment actions, each of the Defendants was aware of his complaints. *See Spalding v. Village*, 186 F. Supp. 3d 884, 918 (ND Ill. 2016) (denying the motion for summary judgment where a reasonable jury could infer that Plaintiff was retaliated against for blowing the whistle on police corruption even when the defendants denied knowing that Plaintiffs were whistle-blowers).

**124.** After Sheppard spoke out as alleged in the preceding paragraphs, Defendants retaliated against him by subjecting him to conduct described throughout the complaint, including

unlawfully removing him as police chief, which is enough to deter a reasonable employee from engaging in protected activity or opposing unlawful activity.

125.    Defendant acted under color of law, through his state-based actions, and directly or personally spearheaded or specially attended to Sheppard in the ways alleged throughout this Complaint.

126.    The misconduct described above was undertaken with malice, willfulness, and reckless indifference to the rights of others.

127.    Bryant's actions reveal the retaliatory underbelly that permeated his decision to remove Sheppard by:

    a)    Improperly usurping the Village Council's authority by terminating Sheppard on April 14, 2023, without taking a vote in public session; and

    b)    Disregarding Village Ordinance and state law that require Bryant to file a statement of reasons justifying Sheppard's removal as police chief and failing to put the matter to a majority vote before the Village Council.

128.    The retaliation against Sheppard was part of the Village's custom, policy, and practice and its policymakers to punish such employees that investigated or complained of misconduct by other officers in violation of 42 USC § 1983.

129.    As a result, Plaintiff has suffered monumental injuries, *to wit*, never having the opportunity be heard before any Board, improper removal as police chief, and corresponding loss of pay, benefits, reputational damage, humiliation, and a garden variety of emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff, David Sheppard, requests that this Court enter judgment in his favor and against Defendant Bryant in an amount to be proved at trial, including for lost pay and benefits, compensatory, special, consequential damages, for non-economic

emotional distress and reputation harms, for attorneys' fees under 42 USC § 1988, and order the Village to reinstate Sheppard as police chief, with full make-whole relief, and for all such other relief to which he is entitled, and the Court deems just and proper.

## COUNT V – 42 U.S.C. § 1983 MONELL CLAIM
### Sheppard v. Defendant Village

130.    Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

131.    At all times relevant to the complaint, Bryant was a person with final policymaking authority within the Village.

132.    Defendant Village trivializes, ignores, and imposes arbitrary and capricious penalties upon employees for alleged misconduct without any regard for consistency in recommending or imposing discipline, without regard for federal law, state law, or its ordinances or due process of law.

133.    The Village set upon a concerted course of unlawful conduct by retaliating against Sheppard and unlawfully removing him as police chief because of Sheppard's aforementioned protected activities.

134.    On further belief, additional examples of misconduct will be uncovered after a reasonable opportunity to conduct discovery related to the Village's disciplinary practices and policies Village's disproportionate enforcement of said practices and procedures.

135.    Because the Village employed the foregoing express acts espoused by the Village through Bryant, Sheppard suffered harm including, without limitation, loss of career and reputation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and emotional distress.

WHEREFORE, for the foregoing reasons, Plaintiff, David Sheppard, requests that this Court enter judgment in his favor and against Defendant Village in an amount to be proved at trial, including

for lost pay and benefits, general compensatory, special, and consequential damages, for emotional distress and reputational harm, for attorneys' fees under § 1988, as well as order the Village to reinstate Sheppard as police chief, restore his benefits with full make-whole relief, and for all such other relief to which she is entitled and the Court deems just and proper.

### COUNT V – VIOLATION OF THE WHISTLEBLOWER ACT (740 ILCS §174/1)
### Sheppard v. All Defendants

136.    Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

137.    The Village of Robbins was Sheppard's employer as defined in 740 ILCS § 174/5.

138.    Bryant at all times an "employer" within the meaning of 740 ILCS §174/5.

139.    Sheppard is an employee of the Village of Robbins as defined by 740 ILCS § 174/5. 129.

140.    The Village of Robbins and Brant were prohibited according to 740 ILCS § 174/15 from retaliating against Sheppard for disclosing to the aforementioned public agencies what he reasonably believed and in fact knew were multiple violations state and federal laws by Bryant.

141.    The Village of Robbins and Bryant were prohibited according to 740 ILCS 174/15 from retaliating against Sheppard for opposing Bryant's aforementioned questionable decisions because Sheppard reasonably believed, and in fact knew, were multiple violations of state and federal laws.

142.    Defendant Bryant and Defendant Village aware of Sheppard's protected activities.

143.    But for Sheppard's whistle blowing activities, which were intended to protect the citizens of the Village of Robbins from public corruption, Plaintiff would not have been terminated from his employment with the Village.

144.    Bryant caused Sheppard's termination in retaliation for Sheppard's protected activity.

145.    Bryant knew his acts as described above were prohibited by Illinois law, but, notwithstanding, he took or caused such actions to be taken with actual and/or deliberate

intention to cause harm, and/or he took or caused such actions to be taken with an utter indifference to, and conscious disregard of, Sheppard's legal and equitable rights and expectations.

146.    As a direct and proximate result of Defendants' retaliatory discipline and discharge in violation of clearly mandated federal and Illinois public policy, Sheppard has sustained damages including the loss of reputation, pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, Plaintiff David Sheppard, respectfully requests reinstatement as police chief; all wages and benefits he would have received but for his improper termination, including but not limited to back pay, front pay, future pecuniary losses, and prejudgment interest; compensatory damages in an amount to be determined at trial; an award of reasonable attorneys' fees, costs, and litigation expenses; and such other relief as the Court may deem just or equitable.

## COUNT VI—VIOLATION OF ILLINOIS WAGE PAYMENT & COLLECTION ACT
### Sheppard v. Defendant Village

147.    Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

148.    The Village agreed that Sheppard is entitled to his past bonuses and accrued comp time, the understanding and past practices constitute binding and enforceable contract supported by valuable consideration defined under the Illinois Wage Payment and Collection Act.

149.    Sheppard performed all conditions precedent and other obligations required under the agreement.

150.    Sheppard was not convicted of any felony or crime involving moral turpitude, and he was not fired for any "just cause" reason before a proper adjudicating body.

151.    As such, no legally appropriate termination occurred, and Sheppard's right to her salary and benefits has never abated, including Sheppard banked time of $425.5 hours, which is the equivalent of ≈ $13,296.88.

152.    On or about April 15, 2023, Sheppard timely demanded payment on such benefits.

153.    Despite an agreement to pay Sheppard, Defendant Village has not paid Sheppard earned any of his accrued compensatory time in violation of the Act.

WHEREFORE, Plaintiff, David Sheppard, prays that this Court finds Defendant Village liable for (a) All lost wages, benefits, and other amounts resulting from its violations of the IWPCA; (b) Statutory penalties in the amount of two percent per month; (c) costs, attorneys' fees, and all other relief available under the IWPCA; and (d) such other relief as the Court deems just and proper.

## COUNT VII – TORTIOUS INTERFERENCE WITH CONTINUED EMPLOYMENT
### Sheppard v. Bryant in his individual and official capacities

154.    Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

155.    Sheppard had a reasonable expectation of continuing his employment with the Village.

156.    Bryant had knowledge of Plaintiff's expectation of continued employment with the Village.

157.    Bryant unilaterally removed Sheppard, thereby terminating his employment.

158.    On information and belief, Bryant maliciously intended to engineer Sheppard's termination for no conduct or performance related reason, but rather because of Bryant's insistence on following federal law, state law, and Village ordinances and procedures.

159.    Bryant's wrongful and malicious conduct alleged above constituted a purposeful interference with Sheppard's continued employment with the Village.

160.    Bryant's actions were the proximate cause of Sheppard's discharge.

161.    Bryant's actions as described above were committed intentionally and with malice.

162.    Sheppard had no performance issues whatsoever justifying his termination, his position was funded and continued to be funded after his termination, and he was given no justification for his termination. His termination was not for cause but was in retaliation for his protected activity related to Defendant Bryant.

163.    Defendant Bryant knew his acts as described above were prohibited by Illinois law, he took or caused such actions to be taken with actual and/or deliberate intention to cause harm, and/or he took or caused such actions to be taken with an utter indifference to, and conscious disregard of, Sheppard's expectancy.

164.    As a direct and proximate result of the wrongful and malicious conduct alleged above, Sheppard has suffered the following:

   **a)**  Sheppard lost his job;

   **b)**  Sheppard has lost significant wages and benefits;

   **c)**  Sheppard's reputation has been irreparably harmed;

   **d)**  Sheppard has suffered emotional distress as a result of being unable to support his family;

   **e)**  Sheppard has suffered diminished employment prospects as a result of both the wrongful and malicious statements of Defendants as well as possessing an employment record of termination from the Village and

   **f)**  Sheppard has suffered other losses, which will be proven at trial.

WHEREFORE, based on the foregoing, Plaintiff prays that this Court enter judgment against Defendant Bryant in his official and individual capacities and in Sheppard's favor: (A) in an amount to exceed fifty thousand dollars ($50,000); and order (B) Sheppard reinstated with the same position that Sheppard would have had but for Defendants' wrongful and illegal conduct;

(C) back pay and benefits with pre- and post- judgment interest; and, (D) compensation for damages sustained as a result of Defendants' wrongful and illegal conduct, including litigation and court costs, and reasonable attorneys' fees.

### COUNT VIII – INDEMNIFICATION
### Sheppard v. Defendant Village

165. Plaintiff incorporates by reference each of the above paragraphs as if fully set forth herein.

166. Defendant Village is obligated to assume financial responsibility for the actions committed by its officials or employees.

WHEREFORE, for the foregoing reasons, Plaintiff, David Sheppard requests that this Court enter judgment in his favor and against Defendant Village and order it to indemnify any other Defendant in this matter.

### COMMON PRAYER FOR RELIEF

WHEREFORE, and that there is sought, Plaintiff, David Sheppard, prays that this Court:

a) Conduct a mediated settlement conference or refer the case to its court-annexed mediation program to assist the parties to bring about a settlement of this case;

b) Enter judgment in the Plaintiff's favor and against Defendants;

c) Order affirmative relief necessary to eradicate the effects of the Defendants' unlawful employment practices;

d) Award the Plaintiff actual damages suffered to the extent permissible by law to compensate the Plaintiff for injuries and losses caused by Defendants' conduct;

e) Award the Plaintiff compensatory damages to the extent permissible by law to compensate the Plaintiff for injuries and losses caused by Defendants' conduct;

f) Award Plaintiff exemplary damages to the extent permissible by law against Bryant only;

g) Award the Plaintiff prejudgment interest on these damages;

26

**h)** Grant court costs and reasonable attorneys' fees under 42 U.S.C. § 1988, § 2000(e), §18 U.S.C. § 2724(b)(3), and other applicable law; and,

**i)** Grant additional relief as the Court deems just and proper under the circumstances.

### JURY DEMAND

**167.** Plaintiff, David Sheppard, demands a trial by jury on all issues so triable.

Respectfully Submitted,

David Sheppard

s/ Gianna Scatchell

By:_____

Plaintiff's Attorney

Dated: May 26, 2023

Gianna Scatchell, Esq.
DISPARTI LAW GROUP, PA.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 330
F: (312) 846-6363
E: Gia@dispartilaw.com

### CERTIFICATE OF SERVICE

The undersigned attorney certifies that she served the foregoing document on all counsel of record via this Court's CM/ECF filing system on May 26, 2023.

By:     s/ Gianna R. Scatchell

27