UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| David Sheppard, ) | |
| ) | |
| Plaintiff, ) | No. 1:23-CV-03360 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| Darren Bryant, Mayor of the Village of ) | |
| Robbins, Illinois, in his individual and ) | |
| official capacities, and the Village of ) | |
| Robbins, indemnitor, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

David Sheppard, who was the police chief for the Village of Robbins, brings a federal civil rights claim and state law claims against the Village and its mayor, Darren Bryant. R. 1-1.[1] Sheppard alleges that after he reported various instances of misconduct committed by Bryant, Bryant wrongfully fired him in retaliation.[2] Bryant and the Village move to dismiss Sheppard's civil rights claim for failure to state a claim, and they request that the Court decline to exercise supplemental jurisdiction over the remaining state law claims. For the reasons discussed below, the civil rights claim is dismissed with prejudice, and the Court relinquishes supplemental jurisdiction over the state law claims.

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page, paragraph, or line number.

[2]Because this action was brought under 42 U.S.C. § 1983, this Court has subject matter jurisdiction over the case under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

## I. Background

In evaluating Sheppard's motion to dismiss, the Court accepts as true all of the factual allegations in the amended complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Sheppard was a Village of Robbins police officer and served as the Village's police chief beginning in 2021. Bryant became the Village's mayor the same year. R. 47, Am. Compl. ¶¶ 4–5.

Sheppard alleges that Mayor Bryant unlawfully fired him after four key instances in which Sheppard challenged Bryant's misconduct, which in turn allegedly "triggered Bryant's retaliatory trajectory." Am. Compl. ¶ 16. First, in 2022, Bryant wanted to fire a deputy chief of the police department because of a social media video that showed the deputy chief drinking alcohol in the office with colleagues while off duty. *Id.* ¶ 18. Sheppard challenged Bryant on the proposed firing, meeting with Bryant 11 times and writing a final report advising against the firing. Sheppard explained to Bryant that there were disciplinary policies and due process obligations that the Village had to meet before firing the deputy chief. Bryant was dissatisfied with Sheppard's efforts and accused him of hampering the investigation into the deputy chief. Without Sheppard's approval and without formal written charges—which were required under department protocol and Village ordinance—Bryant removed the deputy chief from his position and also fired him from the police department. *Id.* ¶ 18–31.

Second, in 2023, Bryant insisted that Sheppard move a key piece of evidence in an investigation—a stolen car—from its storage location. Am. Compl. ¶¶ 32–34.

2

Sheppard explained that to preserve the evidence, it could not be moved from the storage location. Bryant called Sheppard an "idiot" for refusing to move the evidence. *Id.* ¶¶ 35–38.

Third, also in 2023, Bryant ordered Sheppard to hire Frank Sanders, a 65-year-old retired police officer, as a Village police lieutenant—even though Sanders had neither formally applied nor completed the required background check. Am. Compl. ¶¶ 39–40. Bryant "eventually acknowledged" that Sanders needed to submit an official application, but when Sanders did, the application contained several problems, including that it: did not mention prior law enforcement experience, did not include references, and failed to disclose that Sanders had been fired from a different police department in 2003. *Id.* ¶¶ 41–43. Additionally, Sanders resisted Sheppard's attempts to interview Sanders's neighbors as part of the background check, and he also resisted completing the required drug testing—even asking staff at the drug testing facility to take the urine test for him. *Id.* ¶¶ 43–60. Sheppard raised his concerns about Sanders to Bryant, *id.* ¶¶ 60–61, but Bryant nevertheless unilaterally placed Sanders's name on the Village Council's meeting agenda, and Sanders was sworn in as a police lieutenant at that meeting. *Id.* ¶¶ 44–45, 60–61.

Fourth and finally, Bryant allegedly made several questionable decisions in around 2022 and 2023 that Sheppard openly opposed. *Id.* ¶ 62. For example, Bryant allowed a local store to unlawfully promote cannabis consumption on its premises. *Id.* He also improperly classified some police officers as part-time employees even though

3

they were full-time employees, meaning those officers were not receiving the benefits afforded to full-time employees. *See id.*

So in April 2023, Sheppard reported these four categories of Bryant's misconduct to multiple external agencies, including the Illinois Attorney General's Office, the Federal Bureau of Investigation, the U.S. Department of Justice, the Illinois Department of Labor, and Illinois Senator Dick Durban. In his letters to the agencies, Sheppard stated:

> I, Officer David Sheppard, work for the Robbins Police Department, currently serving in the position of Chief of Police. At this time, I am obligated by law, as well as, oath of office, to report and request assistance in the following listed event and incidents. The below listed violation of County, State, and Federal laws are knowingly being committed by Darren Bryant, who is the current sitting mayor.

Am. Compl. ¶¶ 63–64.[3]

Shortly after Sheppard submitted his reports, Bryant and the Village demanded that Sheppard either sign a resignation agreement and covenant not to sue, or instead be removed as police chief. Am. Compl. ¶ 65. Sheppard refused to sign the agreement, and he was promptly fired from his employment on April 13, 2023, even though Bryant never filed written charges against him. *Id.* ¶¶ 65–68; *id.* ¶ 80. Sheppard was notified about the termination in a letter that warned him that he had made "defamatory and slanderous statements against the Village and Village leadership."

---

[3]Sheppard's amended complaint includes a copy of the letter that he sent to the U.S. Department of Justice, and the pleading also says that the same letter was sent to each of the other external entities listed in his complaint. Am. Compl. ¶¶ 63–64; *see also* Pl.'s Resp. at 4 ("[A]ll of the statements were made in the same letters to outside agencies.").

*Id.* at 15. Sheppard requested a hearing before the Village Council, asserting that his termination by Bryant was unlawful, but his request was denied. *Id.* ¶¶ 72–74.

Sheppard filed this lawsuit against Bryant and the Village, bringing a Section 1983 claim alleging that Bryant had retaliated against him for speaking out against and reporting Bryant's misconduct, in violation of Sheppard's First Amendment rights,[4] as well as state law claims under the Illinois Whistleblower Act and the Illinois Wage Payment & Collection Act. Am. Compl. ¶¶ 86–116. Sheppard also sought indemnification, arguing that the Village was obligated to assume financial responsibility for Bryant's actions. *Id.* ¶¶ 117–18. The Defendants moved to dismiss Sheppard's complaint, arguing that Sheppard's First Amendment retaliation claim was barred by *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006). R. 21, at 6 (asserting that *Garcetti* barred Sheppard's First Amendment claim because Sheppard spoke pursuant to his official duties as chief of police rather than "as a citizen"). Sheppard then filed a motion for leave to amend the complaint, acknowledging that the application of *Garcetti* was the focus of the Defendants' motion to dismiss. R. 38. Sheppard's motion to amend was granted, R. 46, and he filed an amended complaint, which the Defendants now again move to dismiss. Am. Compl.; R. 49, Defs.' Mot.

---

[4]Although Sheppard brought his Section 1983 claim against Bryant in both his individual and official capacities, as well as against the Village, Sheppard clarified in his response brief that he intended to only bring the claim against Bryant in his *individual* capacity. In other words, Sheppard is not claiming that the *Village* violated his constitutional rights under Section 1983, so there is no need to address the Defendants' argument that Sheppard has failed to allege Bryant is a final policymaker to assert municipal liability. R. 49, at 4–6.

## II. Legal Standards

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).[5] These allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

---

[5]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### III. Analysis

### A. First Amendment Retaliation

The Defendants argue that Sheppard's Section 1983 claim must be dismissed because he has failed to state a claim upon which relief may be granted. R. 49, Def.'s Mot.; *see* Fed. R. Civ. P. 12(b)(6). As discussed, Sheppard alleges that Bryant retaliated against him for speaking out about Bryant's misconduct, in violation of Sheppard's First Amendment rights.

The First Amendment generally "prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (cleaned up). But when the speech is that of a public employee, like here, the First Amendment's protection of that speech may be limited. *See Kingman v. Frederickson*, 40 F.4th 597, 601 (7th Cir. 2022) ("If a public employee speaks pursuant to his 'official duties,' the First Amendment generally will not shield the individual from an employer's control and discipline because that kind of speech is—for constitutional purposes at least—the government's own speech." (cleaned up)). To establish a prima facie First Amendment retaliation claim, "a public employee first must prove that his speech is constitutionally protected." *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017) (cleaned up). For a public employee to establish that his or her speech is constitutionally protected, the employee must adequately allege that the speech (1) was made as a private citizen rather than "pursuant to [the employee's] official duties," and (2) addressed a matter of public concern.

*Id.* at 966–67; *see also Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

The Defendants contend that Sheppard did not speak "as a citizen" when raising concerns about Bryant's misconduct. Defs.' Br. at 2–5. They assert that "all of the speech Sheppard alleges he engaged in clearly falls within his role as a Police Chief." *Id.* at 4. To determine whether a public employee spoke as a citizen rather than pursuant to official duties, courts must conduct "a practical inquiry into what duties the employee is expected to perform," which "is not limited to the formal job description." *Forgue*, 873 F.3d at 967 (cleaned up).

As the police chief, Sheppard's duties were broad. Under the Village's ordinances, the police chief—the leader of the police department—is "responsible for the performance by the police department of all its functions."[6] R. 52-1 at 2. The police chief also has the authority to "make or prescribe such rules and regulations for the guidance of the members of the department," and to promote officers in certain situations. *Id.* Further, all police department members are responsible for "the enforcement of all ordinances … [and] statutes effective in the village, and to preserve order and prevent infractions of the law." *Id.*

---

[6]Sheppard attached copies of the Village's municipal ordinances as exhibits to his response brief; the Defendants do not oppose the consideration of these exhibits (and in fact they themselves rely on the exhibits, *see* Def.'s Reply at 2). *See Anderson v. Simon*, 217 F.3d 472, 474–75 (7th Cir. 2000) ("In ruling on a 12(b)(6) motion, a district court may take judicial notice of matters of public record without converting the 12(b)(6) motion into a motion for summary judgment.").

Sheppard's speech as to all four categories of alleged misconduct by Bryant falls within the ambit of Sheppard's broad police-chief duties. As the head of the police department, weighing in on which officers would be promoted, hired, or fired from the department was a part of his responsibility to oversee the department and its performance. *See* R. 52-1, at 2. So Sheppard's statements raising concerns about the termination of the deputy chief and the hiring of Sanders as a lieutenant fall squarely within his duties.[7] Similarly, Sheppard's speech about Bryant classifying full-time employees as part-time employees—even if the Village also had a human resources department that "provide[d] personnel services," Pl.'s Resp. at 5—falls within the chief's duty to supervise the operation of the department and its officers. And likewise as to Sheppard's speech about Bryant requesting to move evidence and making questionable decisions authorizing illicit conduct: that speech was part of Sheppard's responsibility to oversee the department's investigations and to enforce the law. *Cf. McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013) ("[A] public employee's commentary about misconduct affecting an area within her responsibility is considered speech as an employee," even if "investigating and reporting misconduct is not included in her job description or routine duties.").

---

[7]Sheppard argues that these types of personnel decisions were not within his duties because the Village ordinances stated, for instance, that "the board of fire and police commissioners" shall make "[a]ppointments to and promotions within the police department." Pl.'s Resp. at 1 (quoting R. 52-1, Village of Robbins Municipal Code § 16-28). But just because police chief does not make the *ultimate* formal appointment does not mean that the chief has no role in determining who is hired and fired from the police department.

Sheppard argues that because he raised his concerns to *external* entities like the FBI and the Illinois Senate—and because no written rules required him as police chief to report misconduct to external entities—his reports were made as a private citizen. Pl.'s Resp. 3–8. But in his letters to those external entities, Sheppard expressly reported his concerns in his capacity as the "Chief of Police," and explained that he was writing "to report and request assistance" from those entities because he was "*obligated* by law, as well as oath of office" to do so.[8] Am. Compl. ¶¶ 63–64 (emphasis added). In other words, Sheppard himself cast his reports as coming from the Chief of Police—not from a private citizen—and "intimately connected" his reports with his job duties. *See Kubiak*, 810 F.3d at 482 (explaining that plaintiff spoke as an employee because her "speech was intimately connected with her professional duties").

Sheppard relies on *Kristofek v. Village of Orland Hills*, 832 F.3d 785 (7th Cir. 2016), in which the Seventh Circuit concluded that a police officer had spoken as a private citizen when he reported misconduct. *Id.* at 793–94. There, the police officer became concerned that official misconduct had occurred when a driver—who had been arrested and received citations—was released (with the citations voided) after the driver's mother initiated phone calls to several public officials. *Id.* at 790–91. The officer reported this misconduct to other police officers as well as to the FBI. *Id.* at

---

[8]Although Sheppard tries to distinguish between the letters that he wrote to *police* agencies like the FBI versus to *non-police* entities like the Illinois Senate, Pl,'s Resp. at 8, the same letters with the same content—written by Sheppard in his capacity as "Chief of Police"—were sent to all the entities. *See* Am. Compl. ¶¶ 63–64.

791. In arguing that *Kristofek* is analogous, Sheppard emphasizes that the officer in *Kristofek*, like Sheppard, reported misconduct that "extended beyond the police department and included higher-level political corruption in the mayor's office." Pl.'s Resp. at 8.

It is true that the Seventh Circuit cautioned that courts "must be especially careful in concluding that employees have spoken pursuant to their official duties when the speech concerns allegations of public corruption." *Kristofek*, 832 F.3d at 793. Careful consideration is appropriate given the bane of public corruption and given that public-employee speech is "the very kind of speech necessary to prosecute corruption by public officials," *Lane v. Franks*, 573 U.S. 228, 240 (2014). The officer in *Kristofek*, however, had a much narrower set of job duties than did Sheppard: the ticketing officer worked part-time, and he was involved only in traffic enforcement but was not responsible for voiding or pursuing citations or determining when arrestees could be released. *Id*. *Kristofek*, after considering the scope of the officer's duties, concluded that his speech—reporting corruption involving the voiding of citations and release of an arrestee—was not made pursuant to his job duties. *Id*. In contrast, here, Sheppard's speech falls well within his vast job duties to oversee the entire police department and all its functions, and Sheppard wrote to the external agencies seeking assistance as the "Chief of Police." Am. Compl. ¶¶ 63–64. Contrary to Sheppard's assertions, *Kristofek* does not compel a different conclusion.

In sum, Sheppard spoke pursuant to his job duties, not as a private citizen. Thus, his speech is not entitled to First Amendment protection. The Defendants'

11

motion to dismiss is granted and Sheppard's Section 1983 claim is accordingly dismissed.[9] Further, because Sheppard has already had a chance to amend his complaint to address the Defendants' *Garcetti* argument, and because Sheppard has not requested leave to amend the complaint a second time, this dismissal is with prejudice.

## B. State Law Claims

Sheppard also brings several claims under Illinois law. Am. Compl. ¶¶ 99–116. Because Sheppard's federal claim is dismissed with prejudice, the Court relinquishes jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3); *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012) (stating that "when federal claims drop out of the case," the trial court has "broad discretion to decide whether to … relinquish supplemental jurisdiction over the state-law claims"—with a "general presumption in favor of relinquishment").

## IV. Conclusion

The Defendants' motion to dismiss is granted. Sheppard has not sufficiently alleged a First Amendment retaliation claim, and the federal claim is dismissed with

---

[9]The Defendants did not raise a qualified-immunity argument, and thus it is not addressed here.

prejudice. The Court relinquishes jurisdiction over the remaining state law claims, which Sheppard may refile in state court.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 22, 2024